Argued and submitted June 24, 1996, affirmed March 26, petition for review denied May 20, 1997 (325 Or 368)

James YANNEY
and Sherry Yanney,
*Appellants,*

*v.*

Peter KOEHLER, Jr.,
Brian Posewitz and Tonkon, Torp, Galen,
Marmaduke and Booth, a partnership,
*Respondents.*

(9501-00091; CA A90142)

935 P2d 1235

John M. Berman argued the cause for appellants. With him on the briefs was J. Rion Bourgeois.

Donald W. McEwen argued the cause for respondents. With him on the brief were Christine Coers-Mitchell and McEwen, Gisvold, Rankin, Carter & Streinz.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

Plaintiffs appeal from a judgment of dismissal, assigning error to the trial court's granting of defendants' motion to dismiss their complaint in its entirety for failing to state ultimate facts sufficient to constitute a claim. ORCP 21 A(8). We affirm.

Before commencing the present action, plaintiffs had filed an FED action against George Clark, seeking to regain possession of their home from him. Plaintiffs maintain that Clark defrauded them of possession of their home, $200,000, and video tapes that plaintiffs had made concerning the medical treatment of temporomandibular joint (TMJ) problems. Clark did this, plaintiffs allege, by representing that he was the sole heir to a large trust, had a personal net worth of $12,000,000, and wished to invest in a medical technology business with plaintiffs.

Defendants in this case are attorneys who defended Clark in the previous FED action by plaintiffs. The gravamen of plaintiffs' complaint is that defendants used wrongful means in representing Clark, who is not a party to this action, and caused injury to plaintiffs by delaying the return of their home to them during the course of the FED action. This appeal concerns the sufficiency of the allegations in plaintiffs' second amended complaint, which alleged the following claims for relief: (1) civil conspiracy, (2) "Violation of Disciplinary Rules," (3) abuse of legal process, (4) "Breach of ORCP Rule 17," and (5) "Unjust Enrichment; Recovery of Stolen Money."

In the court below, defendants filed a motion under ORCP 21 A(8) to dismiss plaintiffs' second amended complaint in its entirety for failure to state ultimate facts sufficient to constitute a claim. Defendants requested that the complaint be dismissed with prejudice on the ground that plaintiffs had failed to acknowledge or comply with the trial court's prior rulings and had merely restated the claims for relief in substantially the same manner as they had been alleged in prior versions of the complaint. The trial court granted defendants' motion and dismissed with prejudice plaintiffs' entire second amended complaint. Plaintiffs

appeal that dismissal, arguing that the trial court erred in concluding that each of the five claims alleged failed to state ultimate facts sufficient to constitute a claim.

██ We review for errors of law the trial court's granting of a motion pursuant to ORCP 21 A(8). *Hansen v. Anderson*, 113 Or App 216, 218, 831 P2d 717 (1992). In assessing the sufficiency of a claim, we disregard any allegations that are conclusions of law. *Tydeman v. Flaherty*, 126 Or App 180, 182, 868 P2d 755 (1994). We accept as true all well-pleaded factual allegations and give plaintiffs the benefit of all favorable inferences that may be drawn from the facts alleged.[1] *McGanty v. Staudenraus*, 321 Or 532, 536, 901 P2d 841 (1995) (citing *Stringer v. Car Data Systems*, 314 Or 576, 584, 841 P2d 1183 (1992)).

█ We turn to the sufficiency of plaintiffs' first claim for relief, which was for civil conspiracy. Generally, a civil conspiracy is:

---

[1] Previous opinions have discussed a variable standard of review for assessing claims tested by a motion to dismiss for failure to state a claim. They suggest that we may review the sufficiency of a claim *without* giving the plaintiff the benefit of all reasonable inferences if it appears that the plaintiff has stated a claim as strongly as the facts permit, *e.g.*, when a plaintiff chooses to appeal the grant of a motion to dismiss rather than replead. *See, e.g., Adams v. Oregon State Police*, 289 Or 233, 239-41, 611 P2d 1153 (1980) (so stating in *dictum*); *McDonald v. Title Insurance Co. of Oregon*, 49 Or App 1055, 1060 n 1, 621 P2d 654 (1980), *rev den* 290 Or 727 (1981) (same). The Supreme Court has noted that that standard of review was applied in cases that predated the enactment of the ORCP. *See Kimbler v. Stillwell*, 303 Or 23, 28-29, 734 P2d 1344 (1987), *overruled by Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993) (noting that inconsistent statements regarding whether inferences should be granted, were found in opinions that antedated ORCP 18 A—the overruling of *Kimbler* by *Buchler* does not affect the validity of that statement). Although we have more recently stated in *dictum* that plaintiffs have not consistently been granted the benefit of all reasonable inferences, *Woods v. First American Title Ins. Co.*, 104 Or App 100, 102-04, 798 P2d 1121 (1990), *rev den* 311 Or 151 (1991), that standard of review has not actually been applied since *Sponseller v. Meltebeke*, 280 Or 361, 363-64, 570 P2d 974 (1977).

In the present case, the trial court apparently agreed with defendants that plaintiffs had merely restated the claims in substantially the same manner as they had been alleged in prior versions of the complaint and, for that reason, the court dismissed the complaint with prejudice. The record below supports the inference that plaintiffs have pleaded their claims as strongly as the facts permit. Despite that, and in the light of the cases discussed above, we grant plaintiffs the benefit of all reasonable inferences that may be drawn from the allegations.

"a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means."

*Bonds v. Landers*, 279 Or 169, 174, 566 P2d 513 (1977) (citations omitted). A claim for civil conspiracy must allege facts showing:

"(1) Two or more persons * * *; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Id.*

Below, defendants asserted that plaintiffs failed to allege sufficiently one or more unlawful overt acts and that there was a meeting of the minds between themselves and Clark. On appeal, plaintiffs argue that the complaint sufficiently alleged both of those elements. Regarding the meeting of the minds element, plaintiffs alleged:

"6.   By late November[ ] 1994[,] Plaintiff[2] had discovered Clark's fraud and began to attempt to extricate himself from the harm caused by Clark.

"7.   In approximately early December[ ] 1994, Clark approached Defendants and asked them to assist him in his dealings with Plaintiff, and to help Clark retain and consolidate his possession, claims to and use of Plaintiff's property.

"8.   In December of 1994, before taking the actions alleged hereafter, Defendants were expressly notified that Clark was a confidence artist with an extensive criminal background who was engaged in fraudulent schemes to defraud Plaintiff and others as set forth above.

"9.   After being notified that Clark had obtained possession of Plaintiff's home and TMJ tapes by making the false representations alleged above, and after being notified that said transactions had been declared void based on Clark's fraud in the inducement and nonperformance, Defendants joined Clark's scheme and plan by assisting him to retain possession of the Plaintiff's home and tapes without compensation, which was the original and ultimate goal of Clark's fraudulent confidence game. There was a

---

2 Although plaintiffs are husband and wife, the complaint refers consistently to "plaintiff."

meeting of the minds between Defendants and Clark on the purposes and goals of Clark's scheme against Plaintiff, and Defendants by their actions, thereby joined Clark in a conspiracy to defraud Plaintiff of his house and the TMJ tapes. Defendants took the actions alleged hereafter in furtherance of the conspiracy.

"10. Defendants, with full knowledge that any interest that Clark or any of his companies had in the TMJ tapes was procured by fraud and had been declared void as a result thereof assisted him in a scheme and plan to set up after the fact documentation to add legitimacy to Clark's claim to said tapes and to assist Clark in interfering with the interest of Plaintiff and his associates in and to said tapes.

"11. Defendants, with full knowledge that any interest that Clark had in Plaintiff's home was obtained by fraud and had been declared void, and with no good faith belief that Clark had any ability to purchase said home or to pay damages for his wrongful possession thereof, engaged in a course of conduct to assist Clark in delaying his eviction from said home * * *."

We disregard the allegation that "[t]here was a meeting of the minds between Defendants and Clark on the purposes and goals of Clark's scheme against Plaintiff," because it is a conclusion of law. *Tydeman*, 126 Or App at 182. Plaintiffs argue that the remainder of the allegations are sufficient to constitute a meeting of the minds because they show that defendants had "knowledge of Clark's unlawful purpose and unlawful acts and * * * took action in furtherance of the unlawful scheme with such knowledge." Defendants counter that

"[a]llegations that Defendants agreed to represent Clark do not equate to or even indicate any agreement on the part of Defendants to 'injure' Plaintiffs. Regardless of Clark's fraudulent conduct, Defendants were entitled to provide a defense without any inference that Defendants agreed to participate in the fraud. Furthermore, 'notification of fraud' by an adverse party in an action does not support the conclusion that attorneys for the alleged fraud doer agreed to participate in the alleged fraud."

We agree. Disregarding those allegations that are conclusions of law, *Tydeman*, 126 Or App at 182, plaintiffs

essentially allege two things: (1) defendants agreed to represent Clark; and (2) plaintiffs told defendants that Clark had perpetrated a fraud against them. Defendants' agreement to represent Clark under the circumstances alleged does not constitute a sufficient meeting of the minds between defendants and Clark to commit fraud in at least two respects. First, the primary purpose of a civil conspiracy must be to cause injury to another. *Bonds*, 279 Or at 174. In this case, plaintiffs allege that Clark sought defendants' assistance to "retain and consolidate his possession, claims to and use of Plaintiff's property," a typical goal of any defendant in an FED action. Assuming that plaintiffs alleged that there was a meeting of the minds on that goal, the primary purpose of that agreement was not to injure plaintiffs, but to represent Clark.

Furthermore, the allegations that defendants acted with certain knowledge about Clark are too vague and conclusory to constitute a meeting of the minds. *See Lawver v. Lawvor*, 86 Or App 721, 726, 740 P2d 1220 (1987) (vague and conclusory allegations insufficient to plead meeting of minds). That is because plaintiffs do not allege any other source of defendants' knowledge of Clark's continued fraud than plaintiffs themselves, and, although plaintiffs allege that Clark's interest in their home and the TMJ tapes "had been declared void," they do not allege by whom. Merely alleging that defendants acted with knowledge of Clark's background, that plaintiffs were accusing him of fraud, and that Clark's interest "had been declared void" is not sufficient to show a meeting of the minds to assist Clark in any subsequent fraud against plaintiffs. The court did not err in granting defendants' motion to strike plaintiffs' claim for civil conspiracy.

We turn to the second claim for relief, which plaintiffs entitled "Violation of Disciplinary Rules." In that claim, plaintiffs allege that defendants violated Oregon State Bar Disciplinary Rule 7-102 in the course of their representation of Clark in the previous FED action, causing injury to plaintiffs by delaying the return of their home to them. Plaintiffs do not argue that the alleged rule violation is significant in the context of a common-law claim for relief. Rather, they

contend that the rule violation is a statutory tort. *See Shah-tout v. Emco Garbage Co.*, 298 Or 598, 600-01, 695 P2d 897 (1985) (discussing distinction). On appeal, plaintiffs urge us to recognize such a claim and argue that precedent allows it where the disciplinary rule is violated intentionally and special damages result. Plaintiffs are incorrect. Violating a disciplinary rule in and of itself does not give rise to a private claim for relief. *Bob Godfrey Pontiac v. Roloff*, 291 Or 318, 324-37, 630 P2d 840 (1981); *see Kidney Association of Oregon v. Ferguson*, 315 Or 135, 142 n 12, 843 P2d 442 (1992) (explaining *Bob Godfrey Pontiac*); *see also id.* at 141 (enforcement of disciplinary rules reserved to Supreme Court and Disciplinary Board it appoints; no other court has jurisdiction to review disciplinary rule violations as such). The trial court did not err in dismissing plaintiffs' second claim for relief for "Violation of Disciplinary Rules."

■■■  Plaintiffs' third claim for relief was for abuse of process. Abuse of process is the perversion of a process that is regular on its face to a purpose for which the process is not intended. *Larsen v. Credit Bureau*, 279 Or 405, 408, 568 P2d 657 (1977); *Clausen v. Carstens*, 83 Or App 112, 118, 730 P2d 604 (1986). We have described it as "the use of the process as a club by which to extort something unrelated to the process from the other party." *Clausen*, 83 Or App at 118. As such, to plead a claim for abuse of process, a plaintiff must allege some ulterior purpose, unrelated to the process, and a willful act in the use of the process that is not proper in the regular conduct of the proceeding. *Larsen*, 279 Or at 408.

In this case, plaintiffs allege, as relevant:

"32.  Defendants authored and filed in the FED action Clark's Answer, Affidavit, Amended Answer and Motion to Dismiss solely for the purpose of delaying restitution of Plaintiff's home to Plaintiff. At said time Defendants knew, or it was obvious, that their filing of these pleadings and process would merely serve to harass or maliciously injure Plaintiff, and was done solely to cause delay of the FED action. *Defendants sought to delay restitution of the home in the FED action so that they could use the resulting damages suffered by Plaintiff as a weapon against him to induce him to forego [sic] recovery of the approximately $200,000 in cash*

*defrauded from Plaintiff by Clark, and to forego [sic] recovery of the TMJ tapes."* (Emphasis supplied.)

Plaintiffs argue that the emphasized language sufficiently alleges that defendants acted with an ulterior purpose unrelated to the FED action. Defendants counter that that allegation is insufficient because: (1) plaintiffs do not allege that they sought or intended to seek any other recovery from Clark besides restitution of their home through the FED action;[3] and (2) they do not allege facts showing that a delay in the recovery of their home would induce them to forgo avenues of recovery against Clark for other relief. We agree. Without alleging facts to show that plaintiffs had viable claims for, and intended to seek, other relief from Clark and that delay in the relief sought in the FED action would induce them to forgo that other relief, the allegations remain insufficient to plead an ulterior purpose. The trial court did not err in dismissing plaintiffs' claim for abuse of process.

■ Plaintiffs' fourth claim for relief is entitled "Breach of ORCP Rule 17." Plaintiffs allege that defendants violated ORCP 17 by filing in the FED proceeding an answer, amended answer, motion to dismiss or transfer the case, and Clark's affidavit. Plaintiffs did not move for sanctions against defendants for any alleged violation of ORCP 17 during the FED proceeding. They urge us to recognize a claim for relief for a violation of ORCP 17 in this, a separate action, and argue that "[t]here is no language in ORCP 17 which limits the recovery of attorney fees by the prevailing party from the opposing attorneys to the action or proceeding in which ORCP 17 was violated." We disagree and decline to recognize such a claim because the text of ORCP 17 clearly indicates that the legislature did not intend for it to convey such a right of action. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (text of statute is best evidence of legislative intent, and if it can be clearly discerned therefrom, our inquiry goes no further). ORCP 17 C (1993)[4] stated:

---

[3] In fact, plaintiffs do not allege anywhere in the complaint facts supporting their allegation that Clark defrauded them of $200,000.

[4] ORCP 17 was amended by Or Laws 1995, ch 618, § 4. We refer to ORCP 17 (1993) because that was the version of ORCP 17 that was in effect at the time of the FED action.

"If a pleading, motion or other paper is signed in violation of this rule, the court upon motion or upon its own initiative shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee."

As the text indicates, a party may only seek sanctions for a violation of ORCP 17 through a motion, not a complaint. In addition, the text uses the terms "sanction," as opposed to "damages," and "order," as opposed to "judgment," indicating the legislature's intent that ORCP 17 C be a mechanism for a party to obtain sanctions against an opposing party *in the action in which the violation took place*, not by a subsequent claim. The trial court did not err in dismissing plaintiffs' fourth claim for relief.

■      Plaintiffs' fifth claim for relief is entitled "Unjust Enrichment; Recovery of Stolen Money." In that claim, plaintiffs allege, as relevant:

"44.   All of Clark's assets came from his theft by deception from Plaintiff and others. All funds received by Defendants from Clark were the fruit of the felonious scheme and plan described above pursuant to which he had defrauded Plaintiff of approximately $200,000 in cash.

"* * * * *

"46.   Either the money paid by Clark to Defendants was money that Clark wrongfully obtained from Plaintiff and should be returned to him, or said money was wrongfully obtained by Clark from Plaintiff and other victims, the exact source of which cannot be identified, and as between Plaintiff and Defendants, Plaintiff is entitled to the recovery thereof, and Defendants are not entitled to retain the stolen 'fruit' of Clark's and their wrongful conduct."

Plaintiffs maintain that the allegations state a claim for quasi contract.

"A quasi contract is a contract implied in law. It is a remedial device to accomplish substantial justice by preventing unjust enrichment. The elements of a quasi contract are a benefit conferred, awareness by the recipient that a benefit

has been received and, under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it. For an injustice to be found, one of three things must be true: '(1) the plaintiff had a reasonable expectation of payment; (2) the defendant should reasonably have expected to pay; or (3) society's reasonable expectations of security of person and property would be defeated by non-payment.'" *Jaqua v. Nike, Inc.*, 125 Or App 294, 298, 865 P2d 442 (1993) (citations omitted, quoting 1 Corbin, *Contracts* § 19A (Supp 1992)).

In this case, plaintiffs allege that "[a]ll of Clark's assets came from his theft by deception from Plaintiff and others" and, with regard to any money Clark paid to defendants, that "the exact source * * * cannot be identified." Plaintiffs have failed to allege facts sufficient to show that *they* conferred a benefit upon defendants. Furthermore, notwithstanding the source of the benefit, plaintiffs have failed to allege facts sufficient to show that it would be unjust for defendants to retain it. If the benefit was conferred upon defendants by others, plaintiffs' only interest in it stems from the allegation that the unidentified others were also defrauded by Clark. Under these circumstances, plaintiffs' expectation of payment, *i.e.*, exaction of the fee Clark paid defendants, is not reasonable, nor should defendants have reasonably expected to remit their fee to plaintiffs. Furthermore, society's reasonable expectations, as identified in *Jaqua*, 125 Or App at 298, would not be defeated by nonpayment of Clark's fee to plaintiffs. The trial court did not err in dismissing plaintiffs' fifth claim for relief.

We have considered plaintiffs' other assignment of error and reject it without discussion.

Affirmed.