**OREGON LABORERS–EMPLOYERS HEALTH & WELFARE TRUST FUND, et al., Plaintiffs,**

v.

**PHILIP MORRIS, INC., et al., Defendants.**

No. Civ. 97–1051–MA.

United States District Court, D. Oregon.

Aug. 24, 1998.

---

N. Robert Stoll, Steve D. Larson, Jodi R. Lazar, Scott A. Shorr, Stoll Stoll Berne Lokting & Shlachter P.C., Portland, OR, Morton H. Zalutsky, Zalutsky & Klarquist, P.C., Portland, OR, Robert J. Connerton, John McN. Broaddus, Connerton & Ray, Washington, DC, for Oregon Laborers–Employers Health & Welfare Trust Fund.

James L. Dumas, Roy Pulvers, Lindsay, Hart, Neil & Weigler, LLP, Portland, OR, for Philip Morris, Inc., R.J. Reynolds Tobacco Co.

John W. Phillips, Daniel A. Zariski, Heller, Ehrman, White & McAuliffe, Seattle, WA, for Philip Morris Inc.

H. Joseph Escher, III, Peter J. Busch, Howard, Rice Nemerovski, Canady, Falk & Rabkin, P.C., San Francisco, CA, for R.J. Reynolds Tobacco Co.

Austin W. Crowe, Jr., Paul O. Ostroff, Paul S. Bierly, Bogle & Gates, PLLC, Portland, OR, for Brown & Williamson, American Tobacco Co.

John C. Monica, David W. Smith, Shook Hardy & Bacon, LLP, Kansas City, MO, George L. Kirklin, David G. Hosenpud, Lane Powell Spears Lubersky, LLP, Portland, OR, for Lorillard Tobacco Co.

Lisa M. Umscheid, Garvey, Schubert & Barer, Portland, OR, for U.S. Tobacco Co.

John Nyhan, Suzanne Cate Jones, Chadbourne & Parker, LLP, Los Angeles, CA, Stephen F. English, Bullivant Houser Bailey,

P.C., Portland, OR, for British–American Tobacco Co.

Yvonne Look, Davis & Gilbert, New York City, Thomas J. Brewer, Wickwire, Greene, Crosby, Brewer & Seward, Seattle, WA, Stephen F. Crew, O'Donnell, Ramis, Crew, Corrigan & Bachrach, Portland, OR, for Hill & Knowlton.

Bruce Merritt, Debevoise & Plimpton, New York City, James R. Hermsen, Miller, Nash, Weiner, Hager & Carlsen LLP, Seattle, WA, Steven O. Rosen, Rosen & Assoc., Salem, OR, for Council for Tobacco Research.

Chester J. Wrobleski, Barry S. Schaevitz, Jacob Medinger & Finnegan, New York City, John D. Wilson, Jr., David M. Jacobi, Wilson Smith Cochran & Dickerson, Seattle, WA, for Smokeless Tobacco Council.

Paul Fortino, Perkins Coie, Portland, OR, for Tobacco Institute.

Marc E. Kasowitz, Aaron Marks, Kasowitz, Benson, Torres, Friedman, LLP, New York City, Jonathan M. Hoffman, Douglas G. Pickett, Martin, Bischoff, Templeton, Langslet & Hoffman, Portland, OR, for Liggett Group, Inc.

## OPINION & ORDER

MARSH, District Judge.

Plaintiffs are six employee health and welfare benefit plans created to provide comprehensive health care benefits to participants who are employed under various collective bargaining agreements. Plaintiffs are either self-insured or purchase insurance from insurance companies and pay for the health care benefits or insurance premiums from contributions made by participants and their employers. Plaintiffs filed this action against eight tobacco companies, three non-profit public relations/lobbying/research councils and one public relations firm seeking to recover expenditures plaintiffs have incurred for medical assistance allegedly due to the use of tobacco by plaintiffs' participants and beneficiaries. Plaintiffs claim that their "infrastructure" has been damaged because of medical claims it has paid for tobacco-related illnesses. During oral argument, plaintiffs clarified that the alleged damage to their infrastructure is limited to the diminishment of the trusts' corpus based upon the payment of medical claims. Plaintiffs do not contend that their administration or management has suffered any independent harm.

Plaintiffs generally allege that, since the early 1950s, defendants have engaged in a conspiracy to thwart and delay public entity efforts to restrict cigarette use and limit cigarette sales. Plaintiffs further allege that defendants assumed a duty to the public to research the health impacts of tobacco use and then failed to release that research and misrepresented what they knew about the health dangers of tobacco use, nicotine addiction and the industry's ability to manipulate nicotine levels. Plaintiffs also allege that defendants conducted research into the development of "safer" cigarettes but refused to utilize such research and discouraged each other from pursuing such a course for fear that such products would constitute an admission of liability. Finally, plaintiffs contend that defendants researched youth smoking habits and specifically targeted underaged smokers through extensive advertising, knowing that children who smoke are more likely to become addicted, long term smokers.

Plaintiffs assert twelve claims for relief: (1) federal RICO, (2) Oregon RICO; (3)–(4) violations of the Sherman Act; (5)–(6) violations of Oregon's antitrust Act; (7) violations of Oregon's Unfair Trade Practices Act (UTPA); (8) fraudulent misrepresentation and concealment; (9) unjust enrichment; (10) negligent breach of a special assumed duty; (11) civil conspiracy and (12) indemnity. Defendants [1] move for judgment on the pleadings against each claim, and alternatively, seek dismissal for failure to join necessary parties. For the reasons which follow, defendants' motion is granted.

---

1. Defendants Philip Morris and RJR filed the motion on behalf of all other named defendants except Liggett Group, Inc., the Smokeless Tobacco Council and the Tobacco Institute. Liggett filed a separate memorandum joining the motion. At oral argument, the Smokeless Tobacco Council and the Tobacco Institute indicated that they did not join in the pending motions.

*Standard*

"A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Nelson v. City of Irvine*, 143 F.3d 1196, 1199 (9th Cir.1998).

*Discussion*

Defendants seek judgment on the pleadings against all claims based upon the remote nature of the asserted injury to the defendants' allegedly wrongful actions. Defendants also point out individual defects with plaintiffs' claims and seek judgment on the pleadings on those alternative grounds as well.

 The threshold question presented with most of the claims is that of proximate causation. Proximate causation involves two distinct elements: (1) a policy element that encompasses concepts of equity and standing (where a plaintiff stands in relation to a defendant's harmful conduct); and (2) foreseeability. Although sometimes referred to as the "remoteness" doctrine or standing, the first element limits relief to those most directly injured by a defendant's conduct. The second element of foreseeability requires that a harm be a reasonably anticipated consequence of the defendant's actions. For purposes of this motion, there is no question that any harm plaintiffs may have suffered was a reasonably foreseeable consequence of their participants' use of tobacco products. Thus, the primary issue I must resolve is whether plaintiffs' claims are too remote from the defendants' allegedly wrongful activities under the policy element of the proximate causation doctrine.

Both parties have submitted copies of numerous unpublished decisions from other jurisdictions which address many of the same issues presented here in cases filed against these same defendants. These decisions demonstrate that the complaint in this case is not unique. They also show, in part, how and why the complaint was carefully drafted to respond to the deficiencies noted in the numerous dismissal orders. This action is clearly part of a national effort to utilize recent disclosures about the tobacco industry's research and development, marketing practices and statements to the FDA and Congress as the basis for shifting health care and other related costs to the tobacco industry.

Tobacco related decisions from other jurisdictions break down into four groups: (1) cases filed by states; (2) cases filed by individuals; (3) cases filed by insurers; and (4) cases filed by pension funds. Although some of the holdings bear some guidance on the issues presented here, the threshold question of remoteness or, what is in reality a question of proximate causation, varies greatly depending upon the party prosecuting the action. Thus, for example, the cases filed by State Attorneys General materially differ on the issue of proximate causation given the state's unique role relative to protection of its citizens, statutes governing Medicaid recoupment and certain state statutes that expressly permit states to maintain actions on behalf of their citizenry. It is for this reason that I find those decisions involving other pension funds more persuasive than decisions involving states or individuals.

While proximate causation is a dispositive issue for the antitrust, RICO and fraud claims, other claims face comparable but unique barriers to relief. The following is a count by count analysis of those claims.

*Antitrust*

Plaintiffs allege that defendants have conspired to restrain trade in violation of Section 1 of the Sherman Act by keeping safer tobacco alternatives out of the market, artificially inflating the price of tobacco products and causing millions to purchase tobacco products when they would not have otherwise done so but for defendants' conspiracy. Plaintiffs assert that this conspiracy was undertaken with the "express purpose" of imposing health care costs upon the plaintiffs. Plaintiffs also allege a conspiracy to monopolize the tobacco market in violation of Section 2 of the Sherman Act by stifling entry of new competitors and suppressing new product development. Plaintiffs assert that they are in the "target area" of defendants' unlawful conduct because "the market for tobacco products and the market for health care are inextricably intertwined."

■ Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." To sustain a claim under Section 1, plaintiffs must allege: (1) an agreement or conspiracy; (2) resulting in an unreasonable restraint of trade; and (3) causing antitrust injury. *Hahn v. Oregon Physicians Service,* 868 F.2d 1022, 1026 (9th Cir.1988), *cert. denied,* 493 U.S. 846, 110 S.Ct. 140, 107 L.Ed.2d 99 (1989).

■ To support a claim under Section 2 of the Sherman Act, plaintiffs must allege "an objective to monopolize or attempt to monopolize any part of the trade or commerce among the several states or with foreign nations." *Western Concrete Structures Co., Inc. v. Mitsui & Co.,* 760 F.2d 1013, 1017–18 (9th Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985).[2]

■ Whether certain activity constitutes an illegal restraint of trade is generally determined under a "rule of reason" analysis, "that is, the fact-finder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Metro Industries, Inc. v. Sammi Corp.,* 82 F.3d 839, 843 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996). Under the rule of reason, "plaintiff must establish 'antitrust injury,' that is, the conduct at issue actually caused injury to competition beyond the impact on the claimant, within a field of commerce in which the claimant is engaged." *Id.* (emphasis added).

The Ninth Circuit has held that the antitrust laws were designed to prevent "antitrust injury," noting that "the antitrust laws are intended to preserve competition for the benefit of consumers in the market in which competition occurs." *Vinci v. Waste Management, Inc.,* 80 F.3d 1372, 1375 (9th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1252, 137 L.Ed.2d 333 (1997). On this basis, the court upheld the dismissal of an antitrust claim filed by an employee allegedly fired because he refused to participate in his employer's anti-competitive scheme. The court further found that antitrust standing should be limited to actual participants in the same market as the "alleged malefactors." *Id.* 80 F.3d at 1376.

In *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), a labor union filed an action against a multiemployer association and its members asserting that the defendants coerced third parties into entering into contracts with nonunion firms and that such activity constituted an illegal restraint of trade under Section 4 of the Clayton Antitrust Act. The Court assumed that the alleged coercive activity could in fact constitute a restraint of trade. However, the Court held that the union was not a proper party despite the broad standing language of the Clayton Act.[3] The Court examined the legislative history of the Sherman Act and determined that "Congress intended the Act to be construed in the light of its common law background." *Id.* 459 U.S. at 530, 103 S.Ct. 897. The Court looked to common law principles of proximate causation and noted that application of those principles made any "black letter" rules impossible, suggesting the requirement of a case-by case analysis. *Id.* 459 U.S. at 534, 103 S.Ct. 897. The Court articulated several factors to guide the analysis: (1) the directness or indirectness of the

---

**2.** Plaintiffs assert claims under federal and Oregon antitrust statutes. Oregon laws, O.R.S. 646.725 and 646.730, are nearly identical to the Sherman Act, sections 1 and 2. Chapter 646.715(2) requires that state courts look to federal case law for guidance and Oregon courts have adopted the federal per se and rule of reason analyses. *Northwest Medical Laboratories, Inc. v. Blue Cross and Blue Shield of Oregon, Inc.,* 310 Or. 72, 81, 794 P.2d 428 (1990); *see also Willamette Dental Group, P.C. v. Oregon Dental Service Corp.,* 130 Or.App. 487, 492, 882 P.2d 637 (1994) (noting that Oregon looks to federal

antitrust decisions for "persuasive guidance"), *rev. den.* 320 Or. 508, 888 P.2d 569 (1995). Neither party has suggested that the analysis for the Oregon antitrust claims should differ from that of the federal. Thus, I will consider the state and federal antitrust claims within a single inquiry.

**3.** Section 4 of the Clayton Act provides in relevant part: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court ..."

causal connection between the asserted wrong and the harm suffered; (2) whether the defendants intended to cause the harm; (3) whether the nature of the plaintiffs' injury was of a type that Congress sought to address; (4) whether there were other persons motivated to vindicate the public's interest in antitrust enforcement; (5) whether the harm asserted was speculative; and (6) the risk of duplicative recoveries or "the danger of complex apportionment of damages." Applying these principles, the Court held that even though the union alleged that defendants intended to harm it directly, the pleadings were insufficient to sustain proximate cause or antitrust injury as a matter of law given the "tenuous and speculative character of the relationship between the alleged antitrust violation and the Union's alleged injury," the potential of duplicative recovery or complex apportionment and the existence of more direct victims. *Id.* 459 U.S. at 545, 103 S.Ct. 897. The Court noted that the union failed to specify its injury, but concluded that any possible injury theory was too indirect. *Id.* 459 U.S. at 541, n. 46, 103 S.Ct. 897.[4]

■ For purposes of this motion, I have assumed without deciding that plaintiffs have adequately alleged the existence of a conspiracy to restrain trade and an attempt to monopolize. However, there is no question that plaintiffs are not participants in the tobacco market. While plaintiffs allege that the tobacco and health care markets are "inextricably intertwined," the parties have not cited nor have I been able to find any authority to support the extension of antitrust injury to unrelated but "intertwined" markets.

■ In addition, plaintiffs fail to meet the proximate causation standard set forth in *Associated General Contractors.* Any injury plaintiffs suffered is attenuated from the defendants' allegedly anti-competitive conduct and is highly speculative, at best. To establish causation on the first element of its claims, plaintiffs would have to show that had defendants produced safer cigarettes, or allowed others to do so, plaintiffs' participants would have purchased them and would have suffered fewer health care costs resulting in

a savings to the plaintiffs. To establish causation on the other elements of plaintiffs' antitrust claims, plaintiffs would have to show that had defendants fully disclosed what they knew about the dangers of smoking and the addictiveness of nicotine, plaintiffs' participants would not have consumed tobacco products and would have suffered fewer health care costs resulting in a savings to the plaintiffs. Like the union in *Associated General Contractors,* the chain of causation between the plaintiffs' injury and the defendants' alleged restraint on the market and attempt to monopolize the market contains too many speculative, tenuous links to withstand scrutiny. Further, the wealth of other pending actions against these defendants reveals a clearly viable and identifiable class of persons motivated to vindicate the public interest in antitrust enforcement. Finally, the risk of duplicative recoveries and the danger of complex apportionment of damages is very real given the pendency of actions filed by individual smokers, the State of Oregon, and health insurance companies. Nothing precludes these plaintiffs from seeking to enforce subrogation rights through any of these other actions, should those other actions succeed. While the plaintiffs here seek only those medical expenses that they have paid, individual claimants can seek the full spectrum of damages available for harm caused by smoking including medical expenses.

Plaintiffs' reliance upon *Blue Shield of Va. v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982) is misplaced since, as a consumer, the plaintiff in that case was a market participant who suffered a direct, financial injury from the allegedly anti-competitive practice. Although plaintiffs describe their injury as "direct," they do so in the context of explaining that their harm was foreseeable. As *Associated General Contractors* clarified, foreseeability is distinct from the proximate causation policy of limiting actions to those situated most immediately to the allegedly harmful conduct. While plaintiffs' harm may well have been foreseeable, plaintiffs' injury, if any, is entirely de-

---

**4.** This included any potential claim the union might have had that its revenues from dues payments declined because members lost jobs or wages as a result of the conspiracy. *Id.* 459 U.S. at 541, n. 46, 103 S.Ct. 897.

pendent upon the injuries suffered by their participants and beneficiaries. Plaintiffs are at least one step removed from the allegedly harmful conduct and plaintiffs therefore lack standing to maintain their antitrust claims.

To the extent plaintiffs seek to recover for tobacco overcharges, courts allow standing only to direct purchasers. *Kansas v. Utili-Corp United, Inc.*, 497 U.S. 199, 206–07, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990); *Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1233–34 (9th Cir.1998).

Although not binding upon me, I note as persuasive authority the fact that every other federal court to address the issue of whether pension funds have standing to pursue claims under the antitrust laws has concluded that they do not. *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 7 F.Supp.2d 277 (S.D.N.Y.1998); *Southeast Florida Laborers District Health and Welfare Trust Fund v. Philip Morris*, 1998 WL 186878 (S.D.Fla. April 13, 1998); *Stationary Engineers Local 39 Health & Welfare Trust Fund v. Philip Morris, Inc.*, 1998 WL 476265, 1998 U.S. Dist. LEXIS 8302 (N.D..Cal. April 30, 1998). *See also Steamfitters Local Union No. 420 v. Philip Morris Inc.*, 1998 WL 212846 (E.D.Pa.1998) (rejecting all claims on grounds that plaintiff suffered no injury at all because it merely handled payments with money provided by others); *Seafarers Welfare Plan v. Philip Morris*, No. MJG–97–2127, slip op. (D.Md. July 14, 1998) (following *Steamfitters*).[5]

Taking all of the allegations as true, I find that plaintiffs cannot meet the standing or proximate causation requirements necessary to maintain an antitrust claim. I further find that the diminishment of the plaintiffs' trust corpus fails to constitute the type of injury Congress sought to redress with the antitrust laws. Accordingly, counts 3 through 6 are dismissed.

*RICO, 18 U.S.C. § 1962(a), (c) and (d)*

Plaintiffs allege that defendants intended to increase or maintain profits by developing a scheme to defraud consumers by wire and mail in violation of 18 U.S.C. §§ 1341 and 1343. Plaintiffs allege that defendants specifically intended to defraud the public "including plaintiffs" and their participants through national ads, communications with the Surgeon General and communications with each other. Plaintiffs seek to recover costs attributable to tobacco related diseases "wholly distinct from harms suffered by individuals." Plaintiffs contend that defendants intended to increase tobacco consumption and shift health care costs to the plaintiffs.

Section 1962(a) prohibits the use or investment of proceeds of racketeering activity to acquire, establish or operate such an enterprise. *United States v. Robertson*, 73 F.3d 249, 251 (9th Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 351, 139 L.Ed.2d 273 (1997). Section 1962(c), by contrast, prohibits racketeering acts to conduct an enterprise affecting interstate commerce. *Id.* Section 1962(d) requires proof of an agreement which is a substantive violation of RICO. *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir.1993).

Liability under RICO, 18 U.S.C. § 1962(c) requires the conduct of an enterprise through a pattern of racketeering activity. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996). "Racketeering activity" includes certain acts indictable under Title 18, including the predicate acts of mail and wire fraud alleged in the second amended complaint. Plaintiffs must allege at least two acts of racketeering activity. *Bowen v. Oistead*, 125 F.3d 800, 806, *cert. denied,* —— U.S. ——, 118 S.Ct. 2343, —— L.Ed.2d —— (1998).

Section 1964(c) provides a civil damage remedy only to those persons who are injured "by reason of a violation of section 1962." *Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir.1992), *cert. denied,* 508 U.S. 908, 113 S.Ct. 2336, 124 L.Ed.2d 247 (1993). In *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), the SIPC filed an action against former members of a brokerage firm

---

5. While I agree with the skepticism expressed by courts in Pennsylvania and Maryland over plaintiffs' claimed injury to its "infrastructure" and whether plaintiffs have suffered any cognizable injury at all, for purposes of a motion on the pleadings, I have assumed that plaintiffs have suffered the injury alleged.

for securities fraud seeking to recover funds SIPC advanced to customers to cover the losses caused by defendants' fraudulent scheme. SIPC was required under the Securities Investor Protection Act of 1970 to advance the funds to customers who were victims of the fraud. SIPC asserted RICO claims under § 1962(c) and relied upon predicate acts of securities fraud under section 10(b) of the Securities and Exchange Act. The Court, citing § 1964(c), expressly rejected but/for causation and instead analyzed the claim under the "proximate cause" standard utilized in *Associated General Contractors*, noting that "the general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Id.* 503 U.S. at 270, 112 S.Ct. 1311 (citations omitted). The Court noted that there must be "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* 503 U.S. at 268, 112 S.Ct. 1311. Applying the factors set forth in *Associated General Contractors*, the Court found that SIPC's alleged injury was too remote since it was contingent upon harm suffered by broker-dealers with costs passed along to SIPC customers. The Court held that to allow actions by those indirectly impacted by alleged racketeering activity "would open the door to massive and complex damages litigation, which would not only burden the courts, but would also undermine the effectiveness of treble damages suits." *Id.* 503 U.S. at 273–74, 112 S.Ct. 1311 (internal citations omitted).

 I find that this is precisely the type of indirect, massive and complex damage liti-

gation that the Supreme Court sought to preclude in *Holmes*. The plaintiffs' injuries are entirely dependent upon injuries sustained by their participants and beneficiaries, making them at least one step removed from the challenged harmful conduct. That defendants may have specifically intended to harm health care providers by aggressively marketing their product and by concealing known health dangers fails to alter the threshold inquiry of standing and proximate causation.[6] Accordingly, plaintiffs' first claim is dismissed. Plaintiffs' second claim under Oregon's RICO statute is dismissed on the same grounds and the ground that plaintiffs have failed to plead a predicate criminal conviction as required under O.R.S. 166.725(7)(a)(A). The fact that plaintiffs rely upon allegedly fraudulent acts predating the 1995 ORICO amendments is irrelevant since the Amended Act applies to all actions filed after September of 1995.[7] Accordingly, plaintiffs' second claim is also dismissed.[8]

*Unfair Trade Practices Act (UTPA)*

Plaintiffs allege that defendants violated O.R.S. 646.608, Oregon's UTPA by willfully misrepresenting that the Tobacco Institute and Council for Tobacco Research would be run by independent scientists, by misleading the public about defendants' knowledge of the harmful effects of tobacco and nicotine addiction and by suppressing product research.

 Oregon's UTPA is a consumer protection statute. *See Cullen v. Investment*

6. I also find that plaintiffs' reliance upon *National Organization for Women v. Scheidler*, 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) is misplaced. The plaintiffs were abortion clinics who sought to recover for losses sustained when abortion protesters interrupted clinic services. Proximate causation was not an issue and the Court's decision primarily focussed upon whether RICO should apply to activities lacking an economic motive.

7. In 1995, the Oregon Legislature amended ORICO requiring an actual conviction to meet the predicate offense requirement. That amendment became effective on September 12, 1995. Plaintiffs do not allege that defendants have been convicted of mail or wire fraud and there is no indication in the statute that claims arising prior to the amendment but filed after the amendment are preserved under the old law.

8. I note that four of the five federal district courts to address federal RICO claims filed by pension funds dismissed the claims. *See Southeast Florida Laborers District Health and Welfare Trust Fund v. Philip Morris*, 1998 WL 186878 (S.D.Fla. April 13, 1998); *Stationary Engineers Local 39 Health & Welfare Trust Fund v. Philip Morris, Inc.*, 1998 WL 476265, 1998 U.S. Dist. LEXIS 8302 (N.D.Cal. April 30, 1998); *Steamfitters Local Union No. 420 v. Philip Morris Inc.*, 1998 WL 212846 (E.D.Pa.1998); *Seafarers Welfare Plan v. Philip Morris*, No. MJG–97–2127, slip op. (D.Md. July 13, 1998); *But See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 7 F.Supp.2d (S.D.N.Y.1998) (allowing claim to proceed based upon alleged harm to "infrastructure").

**1180**

*Strategies, Inc.*, 139 Or.App. 119, 127, 911 P.2d 936 (UTPA should be construed consistently with its consumer protective purposes), *rev. den.* 323 Or. 265, 918 P.2d 846 (1996); *Hinds v. Paul's Auto Werkstatt, Inc.*, 107 Or.App. 63, 65, 67, 810 P.2d 874 (UTPA intended to provide "broad remedial consumer protection"), *rev. den.* 311 Or. 643, 815 P.2d 1273 (1991). Although misrepresentations need not be made directly to the consumer to be actionable, "[t]he general policy of the UTPA is to discourage deceptive trade practices and to provide a viable remedy for consumers who are damaged by such conduct."[9] *Raudebaugh v. Action Pest Control, Inc.*, 59 Or.App. 166, 171, 650 P.2d 1006 (1982).

■■■■ Plaintiffs have not alleged that they are consumers of defendants' products and thus, I find that they lack standing to maintain claims under the Oregon UTPA. However, even if plaintiffs could maintain such a claim, their asserted injury is derivative of their participants' personal injuries and the Oregon courts have expressly excluded personal injuries from coverage under the Act. *Gross Haentjens v. Leckenby*, 38 Or. App. 313, 589 P.2d 1209 (1979); *Allen v. G.D. Searle*, 708 F.Supp. 1142 (D.Or.1989) (rejecting a UTPA claim in the context of a personal injury action under *Gross Haentjens*). Plaintiffs' attempts to characterize their damage as economic and solely in reference to the Fund's infrastructure reflect a distinction in artful pleading rather than substance. Therefore, plaintiffs' seventh claim is dismissed.

*Fraud*

■■■ To recover for common law fraud under Oregon law, a party must establish: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the hearer in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto, Inc.*, 129 Or.App. at 211, 879 P.2d 193, *citing Webb v. Clark*, 274 Or. 387, 391, 546 P.2d 1078 (1976).

■■■ Plaintiffs have adequately pled that defendants made materially false statements, that defendants intended that plaintiffs would rely upon those statements by foregoing efforts to curb tobacco use among their members, and that plaintiffs relied upon defendants' statements when they failed to take more aggressive steps to address their participants' tobacco use. Further, while noting that there is a significant debate on this issue, I will assume without deciding that plaintiffs were justified in that reliance. The critical issue then is again, proximate causation.

The parties have not cited nor have I been able to find any Oregon decision directly addressing the proximate causation issue in the context of a fraud claim. However, in *Ore–Ida Foods, Inc. v. Indian Head Cattle Co.*, 290 Or. 909, 627 P.2d 469 (1981), the Oregon Supreme Court rejected an employer's attempt to recoup worker's compensation benefits it paid to the unmarried cohabitant of a deceased employee by filing a negligence action against the third party whose negligence allegedly caused the employee's death. The Court held that absent an express subrogation or assignment provision and where the beneficiary had no claim for wrongful death (given her unmarried status), dismissal was proper. In reaching its conclusion, the Court noted "[t]he prevailing rule in the United States and England is that a plaintiff may not recover for economic loss resulting

---

9. Plaintiffs rely upon *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto, Inc.*, 129 Or.App. 206, 879 P.2d 193 (1994), *aff'd in part, rev'd in part,* 325 Or. 46, 932 P.2d 1141 (1997) for the proposition that a plaintiff need not be a "consumer" to maintain an action under the UTPA. *Goodyear* involved an action by a franchisee against a franchisor and the issue was whether a corporation could ever maintain an action under the Act.

The court held that the franchisee was a "person" under the Act and could maintain a claim. However, the franchisee was a consumer of the franchisor's products and services. Thus, my ruling is not based upon the fact that plaintiffs are entities rather than individuals, but is instead based upon the fact that plaintiffs have not alleged that they are in any manner "consumers" of defendants' products.

from negligent infliction of bodily harm to a third person." *Id.* 290 Or. at 916, 627 P.2d 469.[10]

I note that *Ore–Ida* is distinguishable because the underlying victim in that case (the decedent employee's beneficiary) had no independent cause of action she could have maintained against the third party. However, the Court's analysis is entirely consistent with the proximate cause analysis set forth in *Associated General Contractors* and *Holmes* and is also consistent with common law cases involving intentional torts. *See Mobile Life Ins. Co. v. Brame*, 95 U.S. 754, 5 Otto 754, 24 L.Ed. 580 (1877) (holding that an insurer has no claim to recover death benefits paid against a third party who allegedly murdered the insured). Other Oregon cases have applied these same standards to limit recovery to direct victims. In *Norwest v. Presbyterian Intercommunity Hospital*, 293 Or. 543, 652 P.2d 318 (1982), the Court held that a minor child could not maintain an action for damages sustained due to deficient treatment given to his mother. The Court found that even though the minor child suffered a distinct injury and even though that injury was reasonably foreseeable:

> "The obstacle to plaintiff's action is that ordinarily negligence as a legal source of liability gives rise only to an obligation to compensate the person immediately injured, not anyone who predictably suffers loss in consequence of that injury, unless liability for that consequential loss has a legal source besides foreseeability."

*Id.* 293 Or. at 569, 652 P.2d 318. *Accord, Ammons v. Jackson Co.*, 119 Or.App. 181, 183, 850 P.2d 376, *rev. den.* 318 Or. 24, 862 P.2d 1304 (1993).

The case of *Oksenholt v. Lederle Laboratories*, 294 Or. 213, 656 P.2d 293 (1982) provides a helpful contrast. A physician filed an action against a drug manufacturer claiming that the manufacturer made negligent or fraudulent misrepresentations about a drug that the physician prescribed. As a result of the misinformation, a patient filed a malpractice action against the doctor which resulted in a settlement. The doctor sought to recover the costs of the settlement and sought damages for injury to his reputation and lost income. The Court held that the physician could only recover those damages "which are a direct. and necessary result of defendant's acts or omissions." *Id.* 294 Or. at 221, 656 P.2d 293. Applying this standard, the Court sustained dismissal of the claim for the settlement award to the patient, but allowed the claim to proceed as to the doctor's own alleged reputational and work loss injuries. *Id.* 294 Or. at 223, 656 P.2d 293.

In this case, plaintiffs seek only to recover medical costs paid on behalf of their members. Like the insurer in *Brame*, plaintiffs were under a contractual duty to pay those benefits regardless of the genesis of the medical condition giving rise to the claim. Unlike the doctor in *Oksenholt*, plaintiffs suffered no injury independent of the injury suffered by their participants and beneficiaries. They essentially seek to recover the same type of settlement costs paid out by the doctor to his patient. The fact that the plaintiffs may have suffered an injury distinct from that of their participants and the fact that their losses may have been reasonably foreseeable to the defendants fails to overcome the obstacle identified in *Norwest* that tort claims are limited to those immediately injured.

I note that Judge D. Lowell Jensen allowed plaintiffs leave to amend common law fraud claims in *Stationary Engineers* to permit plaintiffs to allege that they could have created programs to reduce expenditures but for defendants' misrepresentations. However, I cannot square that ruling with the dismissal with prejudice of the RICO claims since fraud is the predicate for RICO and because I find that the same proximate causation analysis applicable from *Holmes* to the RICO claims applies with equal force to the common law fraud claims under Oregon law. Accordingly, plaintiffs' eighth claim for fraud is dismissed.

10. For a more in-depth discussion of proximate causation under the common law of England and U.S. law back to 1846, *see State of Maryland v. Philip Morris, Inc.*, 1997 WL 540913 (MD.Cir.Ct. May 21, 1997) (holding that in the absence of statute expressly allowing recovery, damages sought by the State of Maryland for tobacco related health care costs were too remote to support recovery).

**1182**

*Unjust Enrichment and Indemnity*

 To state a claim for unjust enrichment, plaintiffs must allege that they conferred a benefit upon the defendants and that it would be unjust for defendant to retain that benefit. *L.S. Henriksen Construction, Inc. v. Shea,* 961 P.2d 295, 296–97 (Or.App.1998). "For an injustice to be found, one of three things must be true: (1) the plaintiff had a reasonable expectation of payment; (2) the defendant should reasonably have expected to pay; or (3) society's reasonable expectations of security of person and property would be defeated by nonpayment." *Yanney v. Koehler,* 147 Or.App. 269, 278, 935 P.2d 1235, *rev. denied,* 325 Or. 368, 939 P.2d 45 (1997) (citations omitted).

 Indemnity claims are similar in that a plaintiff must establish that it conferred a benefit upon a defendant by discharging some legal obligation owed by the defendant to a third party. To state a common law indemnity claim, plaintiffs must allege that a third party made a claim, that the party reasonably incurred costs in defending or satisfying the claim and that, as between the party seeking indemnity and the indemnitor, the costs incurred ought to be borne by the latter. *Martin v. Cahill,* 90 Or.App. 332, 336, 752 P.2d 857 (1988). The fact that a defendant may incidentally benefit from a contract between the plaintiff and a third party is insufficient. *See Aetna Casualty & Surety Co. v. Oregon Health Sciences University,* 310 Or. 61, 65, 793 P.2d 320 (1990).

 With two limited exceptions,[11] I note that every state and federal court to address unjust enrichment and indemnity claims filed by pension funds or states have dismissed them on grounds that plaintiffs paid out benefits at the behest of their participants and beneficiaries and not for the benefit of the defendants. Further, plaintiffs fail to identify any common law duty on the part of plaintiffs and defendants to pay medical expenses, nor do they identify the source of any duty imposed upon defendants to pay for such medical expenses. I concur with the other courts that have addressed this issue

and find that the theory is inapplicable to the facts in this case. Accordingly, plaintiffs ninth and twelfth claims are dismissed.

*Breach of An Assumed Duty*

 Plaintiffs allege that defendants voluntarily assumed a special duty to conduct and report medical research and that they breached this duty by suppressing negative research data. With one exception (applying California law), every federal and state court addressing claims of this kind as against the tobacco industry have entered dismissal orders based upon the absence of physical harm, a necessary element under Sections 323 and 324A of the Restatement of Torts (Second).

Plaintiffs argue that Oregon law does not require physical harm to support a claim for breach of an assumed duty. In *McDonald v. Title Ins. Of Oregon,* 49 Or.App. 1055, 621 P.2d 654 (1980), *rev. den.* 290 Or. 727, 631 P.2d 340 (1981), the court sustained a claim filed by a home buyer against a title insurer who falsely advised the plaintiff that subcontractors had been paid and plaintiffs would not be liable for the subcontractors' expenses. However, the court analogized the facts to that of a "rescue" and did not cite Restatement Sections 323 or 324A. The Supreme Court recognized a negligent misrepresentation claim for economic damages in *Onita Pacific Corp. v. Trustees of Bronson,* 315 Or. 149, 159, 843 P.2d 890 (1992) but that was in the context of finding a duty that arose from a special relationship between the parties. Other Oregon cases have relied upon Section 323 without discussing the physical harm requirement, since there was no dispute that the claims involved physical injury. *See Quackenbush v. PGE Co.,* 134 Or.App. 111, 118, 894 P.2d 535, *rev. den.* 322 Or. 193, 903 P.2d 886 (1995); *Arney v. Baird,* 62 Or.App. 643, 647, 661 P.2d 1364, *rev. den.,* 295 Or. 446, 668 P.2d 382 (1983)

 I find that if directly confronted with the issue, Oregon courts would follow the Restatement Section 323 and 324A and find

---

11. Judges in Minnesota and Wisconsin denied motions to dismiss unjust enrichment claims without analysis of the "benefit conferred" issue. *State by Humphrey v. Philip Morris, Inc.,* 551 N.W.2d 490, 497 (Minn.1996); *State of Wisconsin v. Philip Morris, Inc.,* No. 97–CV–328, slip op. (Dane County Cir.Ct. March 17, 1998).

that physical harm is a requisite element of a claim for breach of an assumed duty. However, even if the Oregon courts declined to adopt the physical harm requirement, the holding from *Onita Pacific* would require that some special fiduciary-like relationship exist between the parties to sustain such a claim. Plaintiffs have not alleged that there is any special relationship between the parties. The statements which form the basis for the claimed assumption of the duty to conduct and report medical research were made to the public at large in advertisements. In addition, plaintiffs cannot show proximate causation necessary to sustain a tort claim under Oregon law for the reasons cited above. Accordingly, plaintiffs' tenth claim is dismissed.

## Civil Conspiracy

Under Oregon law, a civil conspiracy is: "a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." *Yanney*, 147 Or.App. at 272, 935 P.2d 1235 (citations omitted). A claim for civil conspiracy must allege facts showing: "(1) Two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Id.*

Plaintiffs' claim for conspiracy is entirely dependent upon its underlying claims for fraud and violations of the UTPA. Because I find dismissal appropriate for the underlying claims, and because I find that plaintiffs fail to satisfy common law proximate causation standards, plaintiffs' eleventh claim for conspiracy must be dismissed as well.

## Conclusion

The Second Amended Complaint is 140 pages long and details an allegedly sordid history of irresponsible corporate management and unchecked greed on the part of the tobacco industry. However compelling these charges may be, there are very sound judicial policy reasons for limiting legal actions to those parties most directly injured by the harmful conduct. These policies are not new and have lengthy historical roots in our juris-

prudence. To allow plaintiffs to maintain actions that are entirely dependent upon the harm suffered by others threatens chaos for the judicial system, especially where others may (and have) filed their own actions and are capable of recovering a full range of damages, including the medical costs sought here. Accordingly, defendants' motion for judgment on the pleadings for failure to state a claim (# 137) is GRANTED; defendants' alternative motion for judgment on the pleadings for failure to join necessary parties (# 138) is MOOT.

IT IS SO ORDERED.