**HAWAII HEALTH & WELFARE TRUST FUND FOR OPERATING ENGINEERS, on behalf of itself and on behalf of all others similarly situated, Plaintiffs,**

v.

**PHILIP MORRIS, INC.; R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; B.A.T. Industries P.L.C.; Lorillard Tobacco Company; Liggett Group, Inc.; The American Tobacco Company; The Council for Tobacco Research— U.S.A., Inc.; The Tobacco Institute, Inc., and Hill Knowlton, Inc., Defendants.**

Civil No. 97–00833 SPK.

United States District Court, D. Hawaii.

Jan. 25, 1999.

Michael C. Spencer (argued), Millberg Weiss Bershad Hynes & Lerach, New

York City, Theodore Franklin, Van Bourg Weinberg Roger & Rosenfeld, Oakland, CA, Michael O'Connor, Tam O'Connor Henderson Taira & Yamauchi, Honolulu, HI.

Mark J. Bennett, McCorriston Miho Miller & Mukai, Honolulu, HI, Daniel P. Collins (argued), Munger Tolles & Olson, Los Angeles, CA, for Phillip Morris, Inc.

Dale W. Lee, Kobayashi Sugita & Goda, Honolulu, HI, for R.J. Reynolds Tobacco Co.

Lois Yamaguchi, Fukunaga Matayoshi Hershey & Ching, Honolulu, HI, for Brown and Williamson Tobacco Corp., American Tobacco Co., Inc.

Martin Anderosn, Laurence Gay, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for Lorillard Tobacco Co.

James Kawachika, Honolulu, HI, for Liggett Group, Inc.

John Komeiji, Wantanabe Ing & Kawashima, Honolulu, HI, for the Council for Tobacco Research.

Sidney K. Ayabe, Ayabe Chong Nishimoto Sia & Nakamura, Honolulu, HI, for Hill & Knowlton, Inc.

## ORDER AMENDING ORDER OF JANUARY 21, 1999 GRANTING NOTION TO DISMISS

KING, District Judge.

The Court's Order Granting Defendants' Motion to Dismiss is amended to add the phrase "antitrust causes of action fail as well." to the last line of page 8 of the version of the Order filed January 21, 1999. As amended, the Order is as follow:

*INTRODUCTION*

This is a class action brought against the major cigarette manufacturers, tobacco trade associations, and the industry's public relations firm. The Class (not yet certified) consists of all the Hawaii-based multi-employer labor-management health and welfare funds ("the Class" or "Plaintiffs"). Plaintiffs pay medical bills for union workers and their families as trust funds established under the Taft–Hartley Act. *See* 29 U.S.C. § 186(c)(5). In their 98–page, 15–count, First Amended Complaint ("FAC"), the Plaintiff Class describes a 40–year-long conspiracy by the Defendants to suppress information and mislead the Class and the public regarding the effects of smoking. The Class alleges that it has suffered damages in the form of, inter alia, payment of unnecessary medical costs to their beneficiaries. The FAC asserts violations of (1) Federal RICO statutes, 18 U.S.C. §§ 1962(c) and 1962(d); (2) Hawaii's RICO statute, Haw.Rev.Stat. § 842–2; (3) Federal Antitrust Statutes, 15 U.S.C. §§ 1, 15, and 26; (4) Hawaii's Antitrust Act, Haw.Rev.Stat. ch. 480; (5) various state common-law torts; as well as (6) False Advertising under Haw.Rev.Stat. § 708–871.

The slate is not clean. This suit is one of scores of such suits brought nationwide by groups of union trust funds. Many federal district courts have granted motions to dismiss, adopting the same arguments raised by the Defendants in this case.[1] Other courts, however, have denied at least in part Defendants' motions for a variety of reasons, allowing the suits to continue.[2]

1. *See, e.g., International Bhd. of Teamsters Local 734 Health and Welfare Trust Fund v. Phillip Morris*, 34 F.Supp.2d 656 (N.D.Ill. 1998); *Texas Carpenters Health Benefit Fund v. Philip Morris*, 21 F.Supp.2d 664 (E.D.Tex. 1998); *Oregon Laborers–Employers Health & Welfare Trust Fund v. Philip Morris*, 17 F.Supp.2d 1170 (D.Or.1998); *Seafarers Welfare Plan v. Philip Morris*, 27 F.Supp.2d 623 (D.Md.1998); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris*, 1998 WL 212846 (E.D.Pa.1998); *Southeast Fla. Laborers v. Philip Morris*, 1998 WL 186878 (S.D.Fla.1998).

2. *See Kentucky Laborers Dist. Council v. Hill & Knowlton*, 24 F.Supp.2d 755 (W.D.KY. 1998) (allowing RICO claims based upon allegations of misconduct directed at Funds, but also stating "the Court will reconsider these findings at an appropriate time"); *National Asbestos Workers Medical Fund v. Philip Morris*, 23 F.Supp.2d 321 (E.D.N.Y.1998) (denying motions to dismiss, reasoning that "given

These "trust fund suits" should be differentiated from other suits brought by state attorneys general—including Hawaii's—to recover smoking-related health care costs, as well as from other class actions brought directly by individuals for injuries or diseases caused by cigarettes.

Defendants have filed three motions to Dismiss. First, all Defendants have brought a Motion to Dismiss for Failure to State a Claim under Fed.R.Civ.P. 12(b)(6). Second, all Defendants have brought a Motion to Dismiss for Failure to Join Indispensable Parties under Rules 12(b)(7) and 19(a). Third, Defendant The Tobacco Institute has filed a Motion to Dismiss for Lack of Personal Jurisdiction. The first motion was heard on January 19, 1999; the other two were submitted without oral argument. Michael Spencer (who argued), Theodore Franklin, and Michael O'Connor appeared for Plaintiffs. Daniel Collins (who argued for all Defendants) and Mark Bennett appeared for Defendant Philip Morris. Dale Lee represented R.J. Reynolds Tobacco Company; Lois Yamaguchi represented Brown & Williamson Tobacco Corporation; Martin Anderson and Laurence Gay represented Lorillard Tobacco Company; James Kawachika represented the Liggett Group; John Komeiji represented the Council for Tobacco Research; and Sidney Ayabe represented Hill & Knowlton.

The Court has considered the memoranda, exhibits, and oral argument. For the reasons set forth, the Court GRANTS the Defendants' Motion to Dismiss for Failure to State a Claim.

## DISCUSSION

The Defendants' primary argument is that the Plaintiffs—as union trust funds attempting to recoup medical expenses paid to members—are asserting claims that are entirely derivative. They argue that the Plaintiffs are attempting to recover for harm to "third-persons" (the members themselves) and the claims are therefore barred by several established legal doctrines. They cite to analogous situations involving insurance companies and employers [3] where the "derivatively-injured" parties (e.g. insurers or union trust funds) must bring subrogation actions on behalf of the injured persons, rather than "direct actions" such as the instant suit. Thus, they contend that this suit essentially duplicates other suits against the tobacco industry (such as the Attorney General's and the pending individual class actions). The Defendants argue that they face a strong risk of multiple recovery for alleged victims, and that they might have to pay duplicative damages for the same injuries.

### A. The "remoteness doctrine"

■ Defendants argue that the Court should dismiss the case under the "remoteness doctrine" because the Funds themselves have suffered no direct injury. Whether analyzed in terms of proximate cause or standing, the remoteness doctrine generally bars indirect claims where other more directly-injured parties are the proper plaintiffs. See *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 265–74, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (holding that, in RICO context, claims brought by SIPC against stock-manipulating defendants for derivative injury to broker-dealers could not satisfy "traditional requirements of proximate cause"); *Associated Gen. Contractors v. California*

---

the unsettled state of the law, resolution of the plaintiffs' claims and defendants' defenses should not be decided in the abstract, but in the context of specific facts which must be developed in the record"); *Iron Workers Local Union v. Philip Morris*, 23 F.Supp.2d 771 (N.D.Ohio 1998) (sufficient showing of standing and proximate cause to withstand motion to dismiss on grounds of remoteness).

3. Defendants also point to a recent order from the Western District of Pennsylvania dismissing a class action brought against the tobacco industry by a group of self-insured *employers* for health-related costs of smoking. See *Williams & Drake Co. v. American Tobacco*, Civ. No. 98–553 (W.D.Pa. Dec. 21, 1998) (Order dismissing action, relying in large part on "remoteness doctrine").

*State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (applying doctrine and finding "remote" plaintiffs lacked antitrust standing). The Supreme Court summarized the remoteness doctrine as follows: "a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Holmes,* 503 U.S. at 268–69, 112 S.Ct. 1311. The less direct an injury, the more difficult to ascertain damages caused by the violation, as distinct from other factors. *See id.* at 269, 112 S.Ct. 1311. "[R]ecognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury." *Id.* Finally, "the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." *Id.*

The Ninth Circuit has also applied the remoteness doctrine to bar RICO claims by indirectly injured plaintiffs. *See Imagineering, Inc. v. Kiewit Pacific Co.,* 976 F.2d 1303 (9th Cir.1992); *Pillsbury, Madison & Sutro v. Lerner,* 31 F.3d 924 (9th Cir.1994). And, as noted earlier, several district courts—including district courts within the Ninth Circuit—have relied on the doctrine to dismiss claims in nearly identical trust fund suits against the tobacco industry. *See, e.g., Oregon Laborers–Employers Health & Welfare Trust Fund v. Philip Morris,* 17 F.Supp.2d 1170 (D.Or. 1998); *Stationary Engineers Local 39 v. Philip Morris,* 1998 WL 476265 (N.D.Cal. April 30, 1998); *Texas Carpenters Health Benefit Fund v. Philip Morris,* 21 F.Supp.2d 664 (E.D.Tex.1998).

These courts have also rejected Plaintiffs, primary rebuttal here—that (1) the

injuries were to the trust funds themselves, representing injury not only to smokers, but to nonsmokers who were injured by having less money available for other uses;[4] (2) the injury was allegedly intentional and directed specifically to the trust funds because the Defendants knew that their fraudulent scheme would cause the trust funds to expend additional money on health related costs;[5] and (3) the trust funds are the only plaintiffs that can assert RICO and antitrust claims (i.e., individual plaintiffs cannot do so).[6]

■ The Court has analyzed the various opinions from the other districts and agrees with the reasoning primarily set forth in *Oregon Laborers–Employers Health & Welfare Trust Fund v. Philip Morris,* 17 F.Supp.2d 1170 (D.Or.1998). The injuries alleged by the trust funds in the FAC were not direct. As alleged in the FAC, the trust funds seek to recoup medical costs paid to members or other remote damages flowing from those injuries. The claims are derivative. The suit in all material respects seeks recovery for the same injuries to victims represented, or able to be represented, in other direct suits. In this regard, the FAC essentially duplicates the AG and individual class action suits. *See, e.g., Williams & Drake,* slip op. at 9 ("In virtually every case initiated by an entity, other than a state attorney general or other governmental unit, against the Tobacco Companies, the courts have found the remoteness doctrine to bar all claims, federal as well as state") (citations and footnote omitted).

As Judge Marsh found, "this is precisely the type of indirect, massive and complex damage litigation that the Supreme Court sought to preclude in *Holmes.* The plaintiffs' injuries are entirely dependent upon injuries sustained by their participants and beneficiaries, making them at least one step removed from the challenged harmful conduct." *Oregon Laborers–Employers,*

---

**4.** *See, e.g., Oregon Laborers–Employers,* 17 F.Supp.2d at 1179.

**5.** *See, e.g., Pillsbury,* 31 F.3d at 929–30.

**6.** *See id.* at 930.

17 F.Supp.2d at 1179. Moreover, the reasoning applies with equal force to the Hawaii state-law claims. The Court GRANTS the Motion to Dismiss.

### B. Other grounds exist for dismissal.

Even if the suit were not dismissed based on the remoteness doctrine, the Defendants point to other count-specific grounds for dismissal. The Court agrees that these alternate grounds are meritorious and therefore holds that, even if the remoteness doctrine did not bar the claims, the claims fail for other reasons.

■ First, the RICO claims fail because there is no cognizable injury to "business or property" as required under the RICO statutes. Rather, the injury is, in all material respects, personal injury to the smokers. *See Stationary Engineers,* 1998 WL 476265 at *5, *9; *City and County of San Francisco v. Philip Morris,* 957 F.Supp. 1130 (N.D.Cal.1997).

■ Second, the Plaintiffs lack antitrust standing because they are required to be "a participant in the same market as the alleged malefactors." *Bhan v. NME Hosps.,* 772 F.2d 1467, 1470 (9th Cir.1985). The Plaintiffs simply were not consumers or competitors with Defendants. And the type of injuries for which Plaintiffs seek recovery is not of the type the antitrust laws were intended to prevent. *See, e.g., Oregon Laborers–Employers,* 17 F.Supp.2d at 1176.

Thus, even if Plaintiffs are correct in their argument that they are the best plaintiffs to bring RICO or antitrust claims (i.e., that individual plaintiffs could not bring such claims), their complaint would fail. Similarly, the state law RICO and antitrust causes of action fail as well.

Further, to the extent state-law false advertising claims are stated based upon decade's-old advertisements, such claims are clearly barred by the applicable statutes of limitation. *See* Haw .Rev.Stat. §§ 657–7 and 657–14. Finally, the Plaintiffs, "special duty" claims fail as a matter of law for lack of the requisite "physical injury" to the Funds. *See, e.g., Oregon Laborers–Employers,* 17 F.Supp.2d at 1182–83.

### CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants' motion to Dismiss for Failure to State a Claim. Accordingly, the motions to dismiss for failure to join indispensable parties and for lack of personal jurisdiction are DENIED without prejudice as MOOT. Because no further amendment is anticipated, the Clerk shall enter judgment in favor of Defendants pursuant to Fed.R.Civ.P. 58. *See WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir.1997).

IT IS SO ORDERED.