# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 1999 Session

## STEAMFITTERS LOCAL UNION NO. 614 HEALTH AND WELFARE FUND, ET AL. v. PHILIP MORRIS, INC., ET AL.

**Interlocutory Appeal from the Circuit Court for Shelby County**
No. 92260-2 T.D.     James F. Russell, Judge

———————————

**No. W1999-01061-COA-R9-CV - Filed September 26, 2000**

———————————

Union health and welfare funds brought an action against tobacco companies and their trade associations to recover the funds' costs of treating their participants' smoking-related illnesses. The tobacco companies moved to dismiss the complaint, arguing that the funds' economic injuries were derivative of the participants' physical injuries and, consequently, too remote for recovery. The trial court granted the motion to dismiss on the funds' antitrust claim but denied the motion on the funds' claims for fraud and deceit, misrepresentation, conspiracy and violation of the Tennessee Consumer Protection Act. Permission for interlocutory appeal was granted to the tobacco companies by both the trial court and the appellate court. We affirm the trial court's dismissal of the antitrust claim and reverse the trial court's denial of the motion to dismiss on the remaining claims, finding the plaintiffs' alleged injuries are too remote, as a matter of law, to permit recovery. The cause is remanded for entry of an order dismissing the plaintiffs' complaint.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court is Affirmed in Part, Reversed in Part and Remanded.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Leo Bearman, Jr., Jill M. Steinberg, Memphis, Tennessee, Kenneth J. Parsigian, Boston, Massachusetts, Jack E. McClard, Richmond, Virginia, for Philip Morris, Inc.

Jeff Jones, Columbus, Ohio, Albert C. Harvey, Memphis, Tennessee, for R.J. Reynolds Tobacco Company.

Kenneth N. Bass, Washington, D.C., Lee J. Chase, Memphis, Tennessee, for Brown & Williamson Tobacco Corporation.

Mary Elizabeth McGarry, New York, New York, for B.A.T. Industries, PLC.

Jeffrey S. Nelson, Kansas City, Missouri, Roger Dickson, Chattanooga, Tennessee, for Lorrillard Tobacco Company.

Harry Zirlin, New York, New York, William S. Lockette, Jr., Knoxville, Tennessee, for The Council for Tobacco Research - USA, Inc.

Saul C. Belz, Memphis, Tennessee, for The Tobacco Institute, Inc.

Bruce M. Ginsberg, New York, New York, Gary K. Smith, Memphis, Tennessee, for Hill & Knowlton, Inc.

Robert G. McDowell, Nashville, Tennessee, for United States Tobacco Company

John McReynolds, Jr., Knoxville, Tennessee, for Liggett Group, Inc.

Edward Bearman, Memphis, Tennessee, for Smokeless Tobacco Council, Inc.

Sylvia Davidow, D'Lisa R. Simmons, Houston, Texas, for Steamfitters Local Union No. 614 Health and Welfare Fund.

Deborah Godwin, Memphis, Tennessee, for Steamfitters Local Union No. 614 Health and Welfare Fund.

Louis L. Robein, Metairie, Louisiana, for Steamfitters Local Union No. 614 Health and Welfare Fund.
Robert J. Connerton, Washington, D.C., for Steamfitters Local Union No. 614 Health and Welfare Fund.

**OPINION**

Plaintiff/Appellees ("Funds") are multi-employer health and welfare trust funds regulated by ERISA, 29 U.S.C. § 1001 *et. seq.* and funded by employer contributions under collective bargaining agreements. The Funds pay medical expenses for union employees and retirees, as well as their dependents. The Funds are subrogated to all of the rights and causes of action of the participants and beneficiaries for whom medical benefits are provided because of injuries and illnesses caused by any third party tortfeasor.

On January 7, 1998, the Funds filed a complaint against the Defendant/Appellants cigarette manufacturers and their trade associations ("Tobacco Companies"), seeking recovery of costs incurred by the Funds in providing medical treatment and other benefits to participants suffering from tobacco-related illnesses. In the complaint, the Funds asserted that the Tobacco Companies concealed or misrepresented information concerning the harmful and addictive nature of tobacco, that they deceptively manipulated nicotine levels in cigarettes to maintain their addictiveness, and that they suppressed the development and marketing of safer tobacco products. The Funds

contended that these actions prevented the Funds from implementing programs to educate participants and beneficiaries about nicotine addiction, to encourage the use of safer cigarettes, or to encourage beneficiaries to quit smoking. The Funds alleged that, as a result, they incurred increased health care costs on behalf of participants for the treatment of tobacco-related illnesses, thereby causing financial injury to the Funds' assets. The Funds asserted, *inter alia*, claims for antitrust violations under the Tennessee Uniform Trade Practices Act, common law claims for fraud and deceit, negligent misrepresentation, and conspiracy, as well as violations of the Tennessee Consumer Protection Act ("TCPA").

On April 20, 1998, the Tobacco Companies filed a motion to dismiss the Funds' complaint under Rule 12.02(6) of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief can be granted. In the motion, the Tobacco Companies argued that the Funds' claims should be dismissed because their alleged economic injuries were too remote as a matter of law for recovery.

On January 29, 1999, the trial court entered its opinion and order granting the Tobacco Companies' motion to dismiss the Funds' antitrust claims but denying the motion to dismiss its claims for fraud and deceit, negligent misrepresentation, conspiracy, and violation of the TCPA.[1] In its opinion and order, the trial court addressed the Tobacco Companies' argument that, as a matter of law, the Funds' economic injuries were too remote for recovery:

> According to all authorities remoteness is a component of any analysis with regard to proximate cause. In Tennessee the cases are legion in holding that proximate cause is always to be determined upon the facts of each case. Thus proximate cause is ordinarily a question for the jury to decide unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome. Such issues may be preempted by the trial judge only where evidence and reasonable inferences therefrom are so free of conflict that all reasonable minds would agree with the decision of the trial judge. At this stage in the proceedings this Court is of the considered opinion that, given the pleadings and factual assertions therein, it is more appropriate for a jury to determine the issue of remoteness with proper instructions giving due consideration to the issue of remoteness.

Op. and Order at p. 6-7 (footnote omitted). Consequently, the trial court denied the Tobacco Companies' motion to dismiss as to the Funds' claims for fraud and deceit, negligent

---

[1] The Funds stated during oral argument on the motion to dismiss that they intended to voluntarily non-suit their additional claims for unjust enrichment, breach of a voluntarily undertaken duty, breach of expressed and implied warranties, negligence, and products liability. An order recognizing non-suits on each of these claims was entered on March 16, 1999.

misrepresentation, and conspiracy. The trial court denied the motion to dismiss on the Funds' claim for violations of the TCPA based, in part, on the trial court's determination that a plaintiff is not required to establish proximate causation as part of a cause of action under the TCPA.

On May 6, 1999, the trial court issued an order granting the Tobacco Companies permission to seek interlocutory appeal of the trial court's opinion and order. In the order granting interlocutory appeal, the trial court acknowledged that, though it had found the application of the remoteness doctrine a jury question, "many courts that have considered similar cases have dismissed substantially identical third party payor suits in their entirety as a matter of law on remoteness grounds." The trial court noted that the United States Courts of Appeal for the Second and Third Circuits had issued decisions dismissing claims similar to those brought by the Funds in this case on remoteness grounds. *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999), *cert. denied*, 120 S.Ct. 799, 145 L.Ed.2d 673 (2000); *Steamfitters Local Union No. 420 Welfare Fund, et al. v. Philip Morris, Inc., et al.*, 185 F.3d 957 (3d Cir. 1999), *cert. denied*, 120 S. Ct. 789, 145 L. Ed.2d 666 (2000). The trial court also cited decisions by numerous state and federal trial and appellate courts which had dismissed some of the claims brought by third-party payors but had allowed certain claims to proceed, as well as others which had refused to dismiss any third-party payor claims as too remote. Acknowledging that its "treatment of the remoteness doctrine . . . [was] uniquely different from that of other trial courts from around the country[,]" the trial court concluded that interlocutory appeal of its denial of the motion to dismiss was warranted in order to "determine whether Tennessee's common law remoteness limits are uniform with those of other jurisdictions." On June 15, 1999, this Court granted the Tobacco Companies' application for interlocutory appeal.

The issue on appeal is whether the trial court erred in failing to grant the Tobacco Companies' motion to dismiss on the Funds' remaining claims for fraud and deceit, misrepresentation, conspiracy, and violation of the TCPA. There is no dispute as to the trial court's dismissal of the Funds' antitrust claim, consequently, that portion of the trial court's ruling is affirmed.

On appeal, the Tobacco Companies argue that the trial court erred in failing to grant the motion to dismiss as to all of the Funds' claims. The Tobacco Companies claim that the Funds' economic losses are entirely derivative of the physical injuries suffered by participants and are, as a matter of law, too remote for recovery. The Tobacco Companies note decisions from numerous state and federal jurisdictions in substantially similar suits, including decisions by multiple federal appellate courts decided after the trial court issued its opinion and order, which have found claims similar to those asserted by the Funds in this case too remote as a matter of law.

The issue presented in this case is a question of law. Consequently, the scope of review is *de novo* with no presumption of correctness in the trial court's decision. *See Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d 79, 80 (Tenn. 1996).

Under Tennessee Rules of Civil Procedure Rule 12.02(6), a motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint; it admits the truth of all relevant and material allegations "but asserts that such facts do not constitute a cause of action as a matter of law." *Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn. 1997) (quoting *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838 (Tenn. 1996)) (emphasis omitted). When ruling on such a motion, the Court must interpret the allegations in the plaintiff's favor and accept allegations of fact as true. *See id.* Yet, inferences to be drawn from the facts or legal conclusions set forth in a complaint are not required to be accepted as true. *See id.* at 47-48. The motion should be denied unless it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Daniel v. Hardin County General Hosp.*, 971 S.W.2d 21, 23-24, (Tenn. Ct. App. 1997).

In *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252 (Tenn. 1997), the Tennessee Supreme Court noted that the doctrine of proximate cause reflects a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on logic, common sense, policy, precedent and "our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient." *Id*. at 256, n. 6 (quoting *Bain v. Wells*, 936 S.W.2d 618, 625 (Tenn. 1997)); *see also Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993) (stating that the doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm). Tennessee courts have recognized that, to be actionable, conduct must be more than a remote cause of injury. In *Doe v. Linder Const. Co., Inc.*, 845 S.W.2d 173 (Tenn. 1992), the Tennessee Supreme Court noted:

> As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set . . . .

*Id.* at 181 (citing Prosser and Keeton on the Law of Torts, § 41, p. 264 (5th ed. 1984)). The existence of proximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons would agree on the outcome. *See McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 905 (Tenn. 1996).

A number of courts have considered the arguments asserted by the parties in this case. The clear majority of courts have determined that the plaintiffs' claims must be dismissed because the injury is too remote to permit recovery. A leading case is *Laborers Local 17 Health & Benefit Fund v. Phillip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999), cert. denied, 120 S. Ct. 799, 145 L.Ed 2d 673 (2000). In *Laborers Local 17*, union health and welfare trust funds brought suit against tobacco companies to recover money expended to provide medical treatment to the funds' participants suffering from tobacco-related illnesses. *Id.* at 233. The funds alleged "damages inflicted on [their] infrastructure independent of the harm suffered by plan participants[,]" including losses suffered due to the funds' inability to control costs, promote the use of safer cigarettes, and establish education programs. The district court granted, in part, the tobacco companies' motion to dismiss for failure to state a claim, but denied the motion as to the funds' claims for federal RICO

5

violations, state common law fraud, misrepresentation, and concealment, and for state common law assumption and breach of a special duty. *See id.* In its partial denial of the motion to dismiss, the district court held that "a rational trier of fact could find that defendants' alleged wrongdoing proximately caused plaintiffs' alleged injuries, reasoning that the injuries were arguably (a) foreseeable and (b) not too remote as a matter of law . . . ." *Id.* at 233-234. On interlocutory appeal of the district court's decision, the appellate court considered the issue of:

> Whether, under the circumstances alleged in plaintiffs' complaint, economic injuries incurred by a union health care trust fund are purely derivative of the physical injuries which its participants suffered, and are therefore too remote to permit recovery as a matter of law.

*Id.* at 234.

At the outset, the Second Circuit found that the issue on appeal raised a question of proximate cause, namely, "whether the chain of causation linking [the tobacco companies'] alleged wrongdoing to [the funds'] alleged injuries is too remote to permit recovery as a matter of law." *Id.* at 234. Considering that question in the context of the funds' RICO claims, the court stated that the doctrine of proximate causation has traditionally required that there be "some direct relation between the injury asserted and the injurious conduct alleged."[2]  *Id.* at 235 (citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 1318 (1992). Therefore, where a plaintiff's injuries are wholly derivative of harm to a third party, the injuries are generally deemed indirect and consequently, too remote, as a matter of law, to support recovery. *See Laborers Local 17* at 236 (citations omitted). Noting the impossibility of creating a black-letter rule to dictate the result in every case, the court cited three policy factors suggested by the Supreme Court in *Holmes* to guide the application of the general principle that plaintiffs with indirect injuries lack standing to sue. *See Laborers Local 17* at 236-237 (citing *Holmes*, 503 U.S. at 269-270, 112 S.Ct. at 1318). First, the more remote the injury, the more difficult it is to determine the amount of damages caused by the defendant's acts as opposed to other factors. Second, recognizing claims by the indirectly injured creates a risk of multiple recoveries. Third, those who are directly injured are in a better position to remedy harm without the problems found in suits based on more remote injuries.   *See Laborers Local 17*, 191 F.3d at 236-237.

Applying these concepts to the funds' claims, the Second Circuit found that, whether the funds' injuries were labeled as "infrastructure harm" or as "harm to financial stability," absent injury to individual smokers, the funds would not have incurred any increased costs in the form of payment of benefits nor would they have experienced the difficulties of cost prediction and control that

---

[2] The court noted, parenthetically, that its decisions have demonstrated that foreseeability and direct injury (or remoteness) are distinct concepts, both of which must generally be established by a plaintiff. The plaintiff's damages may be foreseeable, yet still "too remote to permit recovery." *See id.* at 236 (citing *Kinsman v. Transit Co. v. City of Buffalo*, 388 F.2d 821, 824-25, & n. 8 (2d Cir. 1968), *and Dundee Cement Co. v. Chemical Labs, Inc.*, 712 F.2d 1166, 1168 (7th Cir. 1983)).

constituted the crux of their damages. *Id.* at 239. The court held that the funds' injuries were "entirely derivative" of the harm suffered by their participants as a result of using tobacco products. *Id.* at 239. Since the defendants' alleged misconduct did not proximately cause the injuries alleged, the plaintiffs lacked standing to bring RICO claims against the defendants. *See id.* at 239.[3]

The court found its conclusion consistent with the three policy factors in *Holmes*. *See Laborers Local 17* at 239-241. The court characterized the damages asserted by the funds as "incredibly speculative," noting the difficulty of proving damages which stem from individual smokers' decisions of whether, and how often, to smoke. *Id.* at 239-40.[4] The court observed that, while the smokers in that case would not present a risk of double recovery under RICO, other remote payors like the employers or health insurers with whom the funds contracted might bring suit, claiming that they ultimately bore the costs. *See id.* at 240. Finally, the court stated that, while individual smokers would not have standing to bring a claim under RICO, individual smokers could assert other claims against the tobacco companies to remedy the harm done by the defendants' alleged misconduct. *See id.* at 241. Therefore, the Second Circuit held that the plaintiff's injuries were purely derivative of the physical injuries suffered by plan participants and were too remote as a matter of law to permit recovery. Consequently, the district court was reversed and the plaintiffs' claims dismissed. *Id.* at 244.

Since the Second Circuit's decision in *Laborers Local 17*, the United States Courts of Appeal for the Third, Ninth, Seventh, Fifth, and Eleventh Circuits have dismissed in their entirety cases involving claims similar to those brought by the Funds in this case on remoteness grounds. *See Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999), *cert. denied*, 120 S.Ct. 844, 145 L.Ed.2d 713 (2000); *Oregon Laborers-Employers Health*

---

[3] The court used the same reasoning to dismiss the funds' common law fraud and special duty claims asserted under state law. *See id.* at 242-243.

[4] In *International Brotherhood of Teamsters, Local 734 Health and Welfare Trust Fund v. Philip Morris, Inc.*, 196 F.3d 818 (7th. Cir. 1999), the court labeled the damages alleged by plaintiff health care funds against defendant tobacco companies as "hopelessly speculative." *Id.* at 826. Addressing plaintiffs' contention that defendants' deception as to the dangers of smoking prevented plaintiffs from conducting education programs for their participants, the court inquired "[j]ust what would the insurers have done, had they known more earlier?" *Id.* at 826. The court queried:

> How effective would [an education campaign] have been? Or: why should we think that insurers would succeed where the Surgeon General and warnings on the product failed? The insurers now have all the information they say they lacked years ago, but what reason have we to believe that this knowledge by insurers has affected cigarette consumption? How would any change have affected the receipt side of the insurers' ledger? Insurers have been offering lower rates to non-smokers for a long time; what is the net effect of these rates on smoking, health, and profits?

*Id.*

*& Welfare Trust Fund v. Philip Morris, Inc.*, 185 F.3d 957 (9th Cir. 1999), *cert. denied*, 120 S.Ct. 789, 145 L.Ed.2d 666 (2000); *International Bhd. of Teamsters, Local 734 Health and Welfare Trust Fund v. Philip Morris, Inc.*, 196 F.3d 818 (7th Cir. 1999); *Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.*, 199 F.3d 788 (5th Cir. 2000); *United Food & Commercial Workers Union, Employers Health and Welfare Fund v. Philip Morris, Inc.*, No. 99-13476, 2000 WL 1190787 (11th Cir Aug. 22, 2000). In these cases, each court held that the plaintiffs' injuries were "entirely derivative" of the physical harm suffered by their plan participants as a result of using tobacco products and, consequently, that the plaintiffs had failed to show that the defendants' alleged misconduct proximately cause the injuries alleged. Numerous federal and state trial courts have also dismissed lawsuits by union funds and other third-party payors on remoteness grounds, characterizing the plaintiffs' claims as "derivative" or contingent on the claims of individual smokers. *See Rhode Island Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 99 F.Supp.2d 174 (D. R.I. 2000) (dismissed complaint as to federal and state RICO, federal and state antitrust, state fraud, failure to perform a special duty, and state unfair trade practices act claims); *Republic of Guatemala v. The Tobacco Institute, Inc.*, 83 F.Supp.2d 125 (D. D.C. 1999) (dismissed complaint as to federal RICO, federal and District of Columbia antitrust, fraud and intentional misrepresentation, negligent misrepresentation, negligent performance of a voluntary undertaking, and conspiracy claims); *Hawaii Health & Welfare Trust Fund for Operating Engineers v. Philip Morris, Inc.*, 52 F.Supp.2d 1196 (D. Haw. 1999) (dismissed complaint as to federal and state RICO, federal and state antitrust, various state tort, and state false advertising claims); *Seafarers Welfare Plan v. Philip Morris, Inc.*, 27 F.Supp.2d 623 (D. Md. 1998) (dismissed complaint as to federal RICO, federal and state antitrust, state consumer protection act, fraud, negligent misrepresentation, conspiracy, breach of voluntarily taken duty, and unjust enrichment claims); *Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.*, 21 F.Supp.2d 664 (E.D. Tex. 1998) (dismissed complaint as to federal RICO, federal and state antitrust, fraud misrepresentation, breach of special duty, breach of warranty, negligence, conspiracy, aiding and abetting, unjust enrichment, state deceptive trade practices and consumer protection acts claims, and vicarious liability), *aff'd*, 199 F.3d 788 (5th Cir. 2000); *Southeast Florida Laborers District Health & Welfare Trust Fund v. Philip Morris, Inc.*, No. 97-8715-CIV-RYSKAMP, 1998 WL 186878 (S.D. Fla. Apr. 13, 1998) (dismissed complaint as to federal RICO, federal and state antitrust, fraud, breach of a special duty, and unjust enrichment claims); *Eastern States Health & Welfare Fund v. Philip Morris, Inc.*, No. 603869/97 (N.Y. Sup. Ct. Mar. 3, 2000) (dismissed complaint as to state fraud, antitrust, deceptive trade practices, false advertising, breach of special duty, negligence, negligent product design, strict liability, entrustment, indemnity, public nuisance, and subrogation claims); *Operating Eng'rs Local 324 Health Care Fund v. Philip Morris, Inc.*, No. 97-741291-CZ (Mich. Cir. Ct. Feb. 12, 1999) (dismissed complaint as to state antitrust, consumer protection act, fraud, misrepresentation, concealment, breach of a special duty, unjust enrichment, conspiracy, and false advertising act claims).

A minority of courts, all federal district courts, have declined to dismiss actions on remoteness grounds. *See Service Employees Int'l Union Health & Welfare Fund v. Philip Morris, Inc.*, 83 F.Supp.2d 70 (D.D.C. 1999) (denied motion to dismiss as to federal RICO, federal and state antitrust, fraud, breach of a special duty, indemnity, and unjust enrichment claims); *Blue Cross Blue*

*Shield of New Jersey, Inc., v. Philip Morris, Inc.*, 36 F.Supp.2d 560 (E.D. N.Y. 1999) (denied motion to dismiss as to federal RICO and antitrust claims); *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 23 F.Supp.2d 771 (N.D. Ohio 1998) (denied motion to dismiss as to federal and state RICO claims, federal and state antitrust claims, and conspiracy claims); *National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 23 F.Supp.2d 321 (E.D. N.Y. 1998) (denied motion to dismiss as to federal RICO, unjust enrichment-restitution, indemnity, and breach of an assumed duty claims). For example, in *Service Employees International Union Health & Welfare Fund v. Phillip Morris, Inc.*, the district court held that the plaintiffs' injuries, depletion of its trust funds, were foreseeable, that individual Fund participants could not recover under RICO for such damages, and that it was too early in the litigation to conclude that the plaintiffs' damages were too difficult to ascertain. *See Service Employees International Union*, 83 F.Supp. 2d at 84-88. Therefore, the district court declined to grant the tobacco defendants' motion to dismiss. *Id.* at 95.

In this case, the Funds allege that the Tobacco Companies' deceptive actions prevented the Funds from implementing programs to educate participants about the dangers of smoking, and to encourage participants to use safer cigarettes or to stop smoking altogether. The Funds assert that the actions of the Tobacco Companies increased the health care costs incurred on behalf of plan participants for tobacco related illnesses and, consequently, damaged the Funds' financial assets.

The Funds argue on appeal that the Funds' alleged injuries are direct, contending that the conduct of the Tobacco Companies and the injury for which damages sought are sufficiently related and need not be "immediately adjacent." However, as noted in *Laborers Local 17*, the key inquiry regarding direct injury is "whether the damages a plaintiff sustains are derivative of an injury to a third party." *Laborers Local 17*, 191 F.3d at 238-39. As in *Laborers Local 17*, the Funds' damages in the instant care are "entirely derivative of the harm suffered by plan participants as a result of using tobacco products." *Id.* at 239. Absent the physical injury to individual plan participants from using tobacco products, the Funds' financial assets would not have been damaged. Therefore, since the Funds' injuries are "purely contingent on harm to third parties, these injuries are indirect." *Id.*

The Funds in this case argue that the fact of damage is certain, even if "some speculation may be required to assess the extent or amount of the Funds' damages. . . ." This can only be characterized as understatement. Indeed, even if the fact of damage is certain, the amount of damage must be deemed "hopelessly speculative." *International Bhd of Teamsters, Local 734 Health and Welfare Trust Fund v. Phillip Morris, Inc.*, 196 F.3d 818, 826 (7th Cir. 1999). As discussed at length in *Laborers Local 17*, it would be "virtually impossible" for the Funds to prove with reasonable certainty the effect education or smoking cessation programs would have had on the physical injuries suffered by plan participants since the damages stem from individual smokers' decisions whether to continue smoking and, if so, how frequently to smoke. The *Laborers* court also observed that the plaintiffs' injuries derived "not simply from defendants' affirmative misconduct but also from plaintiffs' fraudulently induced inaction." *Id.* at 240. It noted that "it is often easier to ascertain the damages that flow from actual, affirmative conduct, than to speculate what damages arose from a party's failure to act." *Id.* The court in *Laborers Local 17* found that "it would be the sheerest sort of speculation to determine how these damages might have been lessened had the Funds

adopted the measures defendants allegedly induced them not to adopt." ***Id.*** We must reach the same conclusion.

Given the fact that the Funds' injuries are unquestionably indirect, and considering the speculation required to prove the Funds' damages, we must conclude that the Funds' alleged damages are too remote, as a matter of law, to support recovery. Consequently, we reverse the trial court's denial of the Tobacco Companies' motion to dismiss as to the Funds' claims for fraud and deceit, negligent misrepresentation and conspiracy.

The Tobacco Companies also argue on appeal that the trial court erred in failing to dismiss the Funds' claim for violations of the TCPA. The Tobacco Companies assert that Tennessee case law demonstrates that the TCPA incorporates a requirement of proximate causation. They also claim that the trial court's interpretation of the TCPA conflicts with its plain meaning and with judicial decisions in other jurisdictions construing nearly identical wording in state consumer protection statutes to require that plaintiffs prove proximate causation.

Tennessee Code Annotated § 47-18-109, enacted as a part of TCPA, provides that:

> Any person who suffers an ascertainable loss . . . as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

Tenn. Code Ann. § 47-18-109(a)(1) (1995). In ***Harvey v. Ford Motor Credit Co.***, No. 03A01-9807-CV-00235, 1999 WL 486894, at *2 (Tenn. Ct. App. July 13, 1999), this Court held that plaintiffs asserting claims under the TCPA are required to show that the defendant's wrongful conduct proximately caused their injury. ***Id.***; ***see also Stracener v. Swindle***, No. 01A01-9502-CH-00047, 1995 WL 414873, at *3 (Tenn. Ct. App. July 14, 1995) (stating "proximate causation must be proven whether the claim is based on fraud . . . or on mere negligence . . . .").

Therefore, based on ***Harvey*** and ***Stracener***, we find that, in order to assert a claim under the TCPA in this case, the Funds must show that the Tobacco Companies' wrongful conduct proximately caused their injury. In light of our holding above that the Funds' alleged injuries are too remote as a matter of law, we also reverse the trial court's denial of the Tobacco Companies' motion to dismiss with respect to the Funds' claim for violations of the TCPA. There is no dispute as to the trial court's dismissal fo the plaintiffs' antitrust claims; therefore, that portion of the trial court's ruling is affirmed.

The decision of the trial court is affirmed in part and reversed in part, as set forth above. The cause is remanded for entry of an order dismissing the plaintiffs' complaint. Costs are taxed against Appellees, Steamfitters Local Union No. 614 Health and Welfare Fund, and their surety, for which execution may issue if necessary.


_____
HOLLY KIRBY LILLARD, J.